UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| HENRY HENDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:07-0055 |
| ) | Judge Echols |
| CHERRY LINDAMOOD, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the Court is a Report and Recommendation ("R & R") from Magistrate Judge Griffin (Docket Entry No. 115) which recommends dismissing the majority of claims against most of the Defendants in this prisoner civil right action. The "R & R" is thorough and well-reasoned. Nevertheless, Plaintiff Henry Henderson, proceeding *pro se*, has filed objections to the R & R (Docket Entry No. 118) and Defendants have filed a Request to Modify the R & R (Docket Entry No. 124), so that the claims against all of the Defendants are dismissed.

## I. BACKGROUND

To place the parties' contentions in context, a brief review of the relevant facts is in order. Plaintiff is an inmate of the Tennessee Department of Correction ("TDOC"). The events about which he complains occurred in 2006 at the South Central Correctional Center ("SCCC") and the Whiteville Correctional Facility ("WCF"), both of which are operated by privately-owned Corrections Corporation of America, Inc. ("CCA").

This is not Plaintiff's first civil rights lawsuit. In 1999 he filed suit against more than fifty prison officials asserting he was retaliated against and harassed at the SCCC from October 1996, to June 1999, because he assisted inmates in civil rights lawsuits and testified in favor of such inmates.

1

Many of the claims were dismissed and an agreed Order was entered dismissing the remainder of the case because the parties indicated they had entered into a compromise settlement agreement.

In the present case, Plaintiff alleges he has been subjected to harassment and retaliation at the hands of Defendant employees of CCA. Plaintiff also claims Defendants have breached the settlement agreement which led to the dismissal of the 1999 action.

Specifically, Plaintiff claims that on June 4, 2006, shortly after he was transferred from another institution to WCF, his cell was searched and during the search Defendant Sabrina Williams confiscated an adapter for his word processor. Plaintiff alleges Williams gave the adaptor to Defendant Brandon Moore who then told Plaintiff he would return the adapter if Plaintiff promised to quit filing lawsuits.

Plaintiff claims his cell was searched again two days later during which Defendants Stephen Dotson and Daniel Pritchard confiscated two ink cartridges for Plaintiff's word processor and two civil rights litigation manuals. He alleges his cell was searched a third time on September 13, 2006, during which Defendant Moore confiscated numerous personal items, threatened Plaintiff's life, and stated she would take all his property if Plaintiff filed another institutional grievance. Plaintiff also contends he complained to Defendant Moore in September 2006 about inmates slipping threatening notes under his cell door, but Moore ignored the complaint and instead placed Plaintiff in administrative segregation.

On October 26, 2006, Plaintiff was transferred to SCCC. Upon arrival, Plaintiff claims his word processor, television, legal materials, and other personal property were confiscated by Defendants Dwight Bumpus, Loreta Russell and Anders.[1] Plaintiff claims that at that time, Defendant

---

[1] Plaintiff does not indicate Anders' first name, although Anders is identified as a correctional officer. Anders has not been served with process.

2

Bumpus told him he would no longer be filing lawsuits with that word processor. Plaintiff alleges he filed a grievance about the matter but was told by Defendant Sonja Hefner that the property was not going to be returned to him because Plaintiff had too much property and some of it was altered. Plaintiff alleges the grievance process was not properly conducted in that he was denied the opportunity to prove his property should be returned to him. Thereafter, Plaintiff claims he attempted to send his property out of the facility, but was told that prison officials did not know where his property was stored.

Based on these events, Plaintiff filed suit against seventeen Defendants under 42 U.S.C. §§ 1983, 1985 and 1986 alleging violation of the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. He also brings claims for breach of contract/breach of the 1999 settlement agreement. In the R & R, Magistrate Judge Griffin recommends dismissal of all of the claims against all of the Defendants, except for Plaintiff's First Amendment retaliation claims against Defendants Moore, Bumpus, and Russell.

## II. STANDARD OF REVIEW

When a party makes timely objections to a Report and Recommendation, the Court "shall make a *de novo* determination of the matter and may conduct a new hearing, take additional evidence, recall witnesses, recommit the matter to the Magistrate Judge for further proceedings and consideration, conduct conferences with counsel for the affected parties, and receive additional arguments, either oral or written, as the District Judge may desire." L.R.M.P. 9(b)(3).

## III. LEGAL ANALYSIS

Plaintiff has filed objections to virtually all of the Magistrate Judge's recommendations. Defendants have filed no objections, but instead request that the R & R be modified so that dismissal is granted on all of Plaintiff's claims against all of the Defendants.

**A. Plaintiff's Objections**

For the most part, Plaintiff's objections merely rehash the arguments considered and rejected by the Magistrate Judge. Plaintiff also generally asserts that the Magistrate Judge did not apply the proper standards of review when analyzing the Defendants' Partial Motion to Dismiss and the Motion for Summary Judgment. The Court has thoroughly reviewed the entire file in this action and finds that the Magistrate Judge correctly applied the law to the facts presented in the record. Nothing is to be gained by restating the law which the Magistrate Judge properly applied. Instead, the Court will address the few instances where Plaintiff raises issues which may not have been presented in precisely the same way to the Magistrate Judge.

Plaintiff argues the Magistrate Judge was wrong in recommending that the Court not entertain Plaintiff's breach of contract claim under the Court's supplemental jurisdiction. As Plaintiff correctly notes, 28 U.S.C. § 1367 provides that district courts which have original jurisdiction over a case have supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, Plaintiff is incorrect in concluding that this case and his last case are related cases within the meaning of 28 U.S.C. § 1367.

The prior case dealt with events which ended in 1999 and involved many different actors than those involved in this case. While Plaintiff may be alleging that present Defendants (most of whom were not involved in the 1999 case) retaliated against him because of the 1999 case, this does not make the two cases part of the same case or controversy. The Magistrate Judge was correct in observing that "[t]he instant action cannot be used as a vehicle to re-open or re-litigate claims raised in the 1999 lawsuit." (Docket Entry No. 115 at 9). This is particularly so since the prior settlement agreement did not indicate the court retained jurisdiction to enforce the agreement, nor did the

4

Case 1:07-cv-00055    Document 127    Filed 09/05/08    Page 4 of 9 PageID #: 790

dismissal order reference the settlement agreement.

The Supreme Court has held that enforcement of a settlement agreement is more than just a continuation or renewal of a dismissed suit and hence requires its own basis for jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Amer., 114 S.Ct. 1673, 1676 (1994). Absent an independent basis for federal jurisdiction, a breach of a settlement agreement is a matter for state court unless the court expressly retains jurisdiction to enforce the agreement or incorporates the terms of the settlement into the dismissal order. Id. at 1677.

As an alternative basis for considering the breach of contract/breach of settlement agreement claims, Plaintiff argues the Court has jurisdiction under the Contracts Clause of Article I, Section 10 of the United States Constitution. That clause provides that no state shall pass any "law impairing the obligation of contracts." U.S. Const. Art. I § 10, cl. 5. However, Contract Clause claims envision a change in state law which operates as a substantial impairment of a contractual relationship. See, General Motors Corp. v. Romein, 112 S.Ct. 1105, 1109 (1992). While CCA may contract with the State of Tennessee to house inmates, Plaintiff has pointed to nothing which would suggest that some sort of state law or regulation has been enacted which affects his settlement agreement.

Plaintiff next objects to the recommended dismissal of his Fourth Amendment claims, even though he recognizes that the Supreme Court in Hudson v. Palmer, 104 S.Ct. 3194 (1984) held that the Fourth Amendment's proscription against unreasonable searches does not apply to prison cells. He argues that Hudson "does not preclude recognition of other inmate rights in the conduct of cell searches," (Docket Entry No. 119 at 6) such as destroying an inmate's property. The short answer to this objection is that while an inmate may have certain rights in relation to his property such as the right to a post-deprivation hearing, that right is not protected by the Fourth Amendment.

Plaintiff also objects to the Magistrate Judge's recommendation that his due process claims

5

under the Fourteenth Amendment be dismissed.  Plaintiff does not seriously dispute that Tennessee provides adequate post-deprivation remedies, see, Waller v. Transcor America, LLC, 2007 WL 3023827 (M.D. Tenn. 2007), but claims a substantive due process violation because the actions of Defendants in repeatedly taking his legal papers and other property "shocks the conscience" in a constitutional sense.  The Magistrate Judge properly rejected this argument.

In Bell v. Johnson, 308 F.3d 595 (6th Cir. 2002), a prison inmate brought suit alleging that jailers confiscated legal paperwork and snacks during "shakedowns" of his cell, purportedly because the inmate "was going to pay" for previously filing a lawsuit against his jailers.  The Sixth Circuit indicated that in such a case, the "shocks the conscience" test was not to be employed because prisoners have a clearly established right to be free from retaliation for exercising First Amendment rights.  See, Scott v. Churchill, 377 F.3d 565, 569-70 (6th Cir. 2004).

In this case, the Magistrate Judge did in fact conclude Plaintiff could maintain First Amendment retaliation claims against Defendants Moore, Bumpus and Russell.  In his Verified Complaint, Plaintiff explicitly stated Defendants Moore and Bumpus made statements about Plaintiff no longer being able to use his word processor to file more lawsuits and Defendant Russell took the word processor upon Plaintiff's arrival at SCCC, after Defendant Bumpus's statement about Plaintiff being unable to file more lawsuits.

In his objections, Plaintiff claims he should be allowed to maintain his retaliation claims against several other Defendants and in support points to specific paragraphs of his Verified Complaint.  This Court has reviewed those paragraphs and the Verified Complaint as a whole and finds no basis for holding any other Defendant liable for retaliation in violation of the First Amendment.  To establish a retaliation claim, Plaintiff must show that a particular defendant engaged in adverse action motivated by Plaintiff's involvement in protected activity.  Bell, 308 F.3d

6

at 602. That other Defendants may have participated in confiscating Plaintiff's property during a cell search says nothing about their knowledge of Plaintiff having previously filed suit, and certainly does not show that those Defendants took the property because Plaintiff may have engaged in such activity. Plaintiff stating that certain Defendants engaged in activity which violated his constitutional rights simply does not make it so.

Finally, Plaintiff objects to the recommended dismissal without prejudice of Defendant Anders because that Defendant was not served with process. Plaintiff claims he did not have an adequate opportunity to serve Anders because discovery was stayed pending the disposition of the pending dispositive motions.

Rule 4(m) of the Federal Rules of Civil Procedure requires dismissal without prejudice if a defendant is not served with process within 120 days after the Complaint is filed. Fed. R. Civ. P. 4(m). In this case, the Complaint was filed on July 10, 2007, meaning that service should have been accomplished by the middle of January 2008. In an Order entered on November 13 2007, the Magistrate Judge informed the parties that "a Court order is not required for a party to engage in discovery and discovery is not stayed upon the filing of any motion unless specifically ordered by the Court." (Docket Entry No. 53 at 3). It was not until March 4, 2008 that the Magistrate Judge entered a stay of discovery because dispositive motions had been filed (Docket Entry No. 102) and this was long after Defendant Anders was required to be served with process. Therefore, the Court rejects Plaintiff's assertion that he was unable to make inquiry of the location of Defendant Anders because of the stay of discovery. See, Scott v. Hern, 216 F.3d 897, 912 (10th Cir. 2000).

In sum, the R & R is very thorough and it is clear Magistrate Judge Griffin fairly considered all of Plaintiff's claims in light of the governing law. This Court has reviewed all of the objections to the R & R raised by Plaintiff and finds none to have any merit. Accordingly, Plaintiff's objections

7

will be overruled.

**B. Defendants' Request to Modify the R & R**

Defendants have filed no formal objections to the R & R, but instead, as a part of their response to Plaintiff's objections, request the Court to modify the R & R so that the First Amendment retaliation claims against Defendants Moore, Bumpus and Russell are also dismissed. This request will be denied.

Defendants claim that even if Defendants Moore and Bumpus said something about Plaintiff not being able to file anymore lawsuits or grievances because his word processor was confiscated, this does not amount to a constitutional deprivation. In this regard, Defendants point out that abusive language and verbal harassment from a prison guard to an inmate does not rise to the level of a constitutional claim. While that may be so, Plaintiff's claim is broader than merely abusive language; it involves the alleged deprivation of property in retaliation for exercising his First Amendment rights and the Sixth Circuit in Bell, *supra*, and other cases has made it abundantly clear that an inmate cannot be retaliated against for engaging in constitutionally protected activity.

Defendants also assert that regardless of any ulterior motive, Plaintiff's property would have been taken in any event because it was contraband. However to reach that conclusion, the Court would have to accept the gloss placed on the facts by the Defendants. It is far from a concrete fact that all of the property was taken because it was contraband. Plaintiff claims none of the property was contraband and there is evidence in the record which appears to support the contention that at least some of the property was not in fact contraband. Specifically, among the grievances attached to Plaintiff's Verified Complaint is an "Inmate Grievance Response" in which the Chairman and Members of the Grievance Committee stated the Committee did not concur with correctional officers' conclusion that the confiscated adapter which powered the word processor was contraband and

8

recommended the adapter be given back to Plaintiff or replaced.

It could very well be that the adapter at issue was altered in some way and that the other property was confiscated because it was altered or considered "excess property" under institutional regulations. However, such questions are not resolvable on the basis of this record and it will be for the fact-finder to determine the actual facts.

## IV. **CONCLUSION**

On the basis of the foregoing, the R & R (Docket Entry No. 115) will be accepted and approved and the Court will follow the recommended dispositions of the various claims against the Defendants as set forth in the R & R. Accordingly, Plaintiff's objections to the R & R (Docket Entry No. 118) will be overruled and Defendant's request to modify the R & R (Docket Entry No. 124) will be denied.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

9